IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36140-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL PATRICK CARGILL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Michael Cargill appeals from convictions for possession of a stolen motor vehicle, possession of a controlled substance, and possession of a motor vehicle theft tool. We affirm.

FACTS

Following a report that a shop had been broken into and a pickup truck and dirt bike stolen, police recovered the stolen pickup truck and received a tip about the location of the missing dirt bike. Sergeant Kurt Vigesaa followed up on the tip and discovered Michael Cargill working on the dirt bike. The sergeant arrested Cargill and transported him to jail. A search at the jail uncovered methamphetamine and shaved car keys.

Sergeant Vigesaa testified at trial that he interviewed Cargill in the patrol car and was told that an unknown person had brought the dirt bike to the house. Vigesaa told

Cargill he was acting deceptively and not being honest with him. Cargill then admitted that his brother stole the bike and delivered it to him; he had lied to the officer initially in order to protect his brother. Defense counsel did not object to the testimony.

Cargill testified at trial that he did not know that the bike was stolen and had believed it belonged to a friend. He told Vigesaa that he did not know to whom the bike belonged. He knew that his brother had stored stolen property at the house, but initially told the officer that there was no other stolen property present, which was untrue. He admitted being "deceptive" with the officer.

The jury found Mr. Cargill guilty on the three noted counts. Mr. Cargill timely appealed to this court. A panel heard oral argument October 23, 2019, and soon thereafter stayed the case due to the Washington Supreme Court granting review of the primary issue presented here. The stay was lifted June 18, 2020, upon the issuance of the mandate in *State v. Van Wolvelaere*, 195 Wn.2d 597, 461 P.3d 1173 (2020).

The parties filed supplemental briefs concerning *Van Wolvelaere*. The panel then considered the appeal without hearing further argument.

ANALYSIS

The appeal raises two issues: is a dirt bike a motor vehicle, and was counsel ineffective for not objecting to the testimony that Mr. Cargill was "deceptive"? We address the questions in the order listed, answer the first question in the affirmative, and answer the second in the negative.

2

No. 36140-3-III
*State v. Cargill*

*Dirt Bike as Motor Vehicle*

When this court initially considered this case, the governing authority was found in the fractured opinions in *State v. Barnes*, 189 Wn.2d 492, 403 P.3d 72 (2017), and this court's version of *Van Wolvelaere*.[1]  Now that the Washington Supreme Court has reached a consensus, we apply their *Van Wolvelaere* opinion.

At issue here is whether a dirt bike, a form of motorcycle designed primarily for off-road use, is a "motor vehicle" within the meaning of the possession of a stolen motor vehicle statute, RCW 9A.56.068.  That statute makes it a crime to possess "a stolen motor vehicle."  *Id.*  The statute does not define the word "motor vehicle," an oversight that has led to extensive litigation.

Mr. Cargill argues that because a dirt bike cannot legally be driven on the roadways of this state, it cannot constitute a "motor vehicle."  Supp. Br. of Appellant at 2-3.  The State argues that the dirt bike at issue in this case fits the definition of "motorcycle" found in the traffic code and notes that motorcycles are expressly defined as a motor vehicle per RCW 46.04.330.  Supp. Br. of Resp't at 2-4.

At issue in *Van Wovelaere* was whether a snowmobile was a "motor vehicle."  The *Van Wolvelaere* majority began its analysis by reference to the criminal code's definition of "vehicle" found in RCW 9A.04.110(29), noting that the criminal definition cross-

---

[1] *State v. Van Wolvelaere*, 8 Wn. App. 2d 705, 440 P.3d 1005 (2019), *rev'd*, 195 Wn.2d 597, 461 P.3d 1173 (2020).

3

referenced the definition of "motor vehicle" found in the traffic code. *Van Wolvelaere*,

195 Wn.2d at 600-601. In turn, the traffic code defines both the word "vehicle" and the

word "motor vehicle." *Id*. at 601. It then combined those two definitions into the

following working definition:

> So a motor vehicle is a self-propelled device (a description of its mechanics)
> that is capable of moving and transporting people or property on a public
> highway (a description of its function).

*Id*.

After defining the test, the court applied a two-step process—is the device in

question self-propelled, and is it capable of moving people or property on the roadways?

*Id*. at 602. The court concluded that a snowmobile was a self-propelled device under the

traffic code, citing to RCW 46.04.546. *McFarland*, 195 Wn.2d at 602. The remaining

question was whether the snowmobile was capable of moving and transporting people *on

a public highway*. *Id*. The majority determined that the traffic code permitted

snowmobiles on a public highway in certain circumstances. *Id*. at 603-604. The majority

then concluded that a snowmobile was a motor vehicle. *Id*. at 604-606.

The parties frame their arguments against this backdrop—each acknowledging

that a dirt bike is self-propelled—with the State arguing that the definition of motorcycle

resolves the issue while Mr. Cargill argues that dirt bikes are not supposed to be used on

the public roadways. We believe *Van Wolvelaere* resolves the argument against Mr.

Cargill.

4

*Van Wolvelaere* turned on the fact that snowmobiles not only were physically capable of transporting humans on roadways, they also were legally authorized to do so in some circumstances. *Id.* at 602-604. The same can be said for dirt bikes. Not only are they motorcycles, an item that the legislature classifies as a motor vehicle, but they are designed to convey humans on hard surfaces such as dirt or concrete. They are capable of carrying people on the public roadways. Off-road motorcycles also are legally authorized to convey humans on the roadways in some circumstances. RCW 46.61.705(1).[2] Accordingly, a dirt bike is a motor vehicle under *Van Wolvelaere*.

The evidence was sufficient to support the conviction for possession of a stolen motor vehicle.

*Effective Assistance of Counsel*

Mr. Cargill argues that his counsel was ineffective in failing to object to Sergeant Vigesaa's testimony that he disbelieved Cargill's initial story. This argument fails to meet the heavy burden placed on such contentions.

Well-settled standards govern review of this claim. An attorney's failure to perform to the standards of the profession will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 333-335, 899 P.2d 1251 (1995). Courts must be highly deferential to counsel's decisions when

---

[2] The legislature also has established a process for registering off-road vehicles for on-road use. RCW 46.16A.435(1), (2).

5

evaluating ineffectiveness claims. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts evaluate counsel's performance using a two-prong test that requires determination whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id*. at 690-692. When a claim fails one prong, a reviewing court need not consider both *Strickland* prongs. *Id*. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). If the evidence necessary to resolve the ineffective assistance argument is not in the record, the claim is not manifest and cannot be addressed on appeal. *McFarland*, 127 Wn.2d at 334.

Mr. Cargill argues that his counsel should have objected to Sergeant Vigesaa's testimony that Cargill was not honest with him. The decision was a tactical choice that cannot be second-guessed now. At trial, Mr. Cargill gave a third version of events, claiming that he did not know the vehicle was stolen and that it belonged to a friend. Previously, he first told the officer that an unknown person brought the item to the house, and then he told the officer that his brother had stolen it and brought it to the house.

The fact that he initially was being deceptive with the officer was clearly before the jury because of the two different stories he gave to the officer. The sergeant's belief that Cargill was being deceptive with him added nothing to the narrative other than to

6

explain why he continued to ask about the ownership of the dirt bike.[3]  The statement did not constitute significant prejudice under these circumstances and counsel understandably would not want to call further attention to the conflicting stories by objecting.

Mr. Cargill has not established that his counsel erred, let alone that he was significantly prejudiced by the unchallenged testimony.  Accordingly, he has not met his burdens under *Strickland*.  Counsel did not perform ineffectively.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.

---

[3] It might have been a relevant fact if the voluntariness of the statement was at issue or if the nature of the interrogation was somehow of concern at trial.